IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
04 APR -6 PM 3:21
U.S. D.C.
N.D. OF ALABAMA

| | |
|---|---|
| ANGIE PETERSON, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: CV 03-P-1440-S |
| } | |
| STATE OF ALABAMA } | |
| DEPARTMENT OF HUMAN } | **ENTERED** |
| RESOURCES, et al. } | |
| } | **APR - 6 2004** |
| Defendants. } | |

## MEMORANDUM OPINION

The court has before it the Defendants' Motion to Dismiss Or, in the Alternative for Summary Judgment. (Doc. # 6).[1] The court heard oral argument on this motion on February 2, 2004. By agreement of the parties, the only claim remaining in this case is an alleged violation of the Plaintiff's exercise of her First Amendment rights under 42 U.S.C. § 1983 against Defendant Caro Shanahan in her individual capacity. (*See* Doc. # 25). The Defendant's potentially dispositive motion asserts that Shanahan is due qualified immunity. By order dated February 3, 2004, the court advised the parties that the motion would be under submission as to the remaining claim after the completion of additional briefing addressing whether Shanahan was fairly and clearly on notice that terminating the Plaintiff would have violated her First Amendment rights.[2] The court has received the additional

---

[1] Both parties submitted briefs (Docs. # 8, 13) and evidence in support of their briefs (Docs. # 7, 11). The court finds no basis to exclude the evidence submitted. Accordingly, pursuant to Fed. R. Civ. P. 12(b), the court will treat Defendant's motion as one for summary judgment as provided in Fed. R. Civ. P. 56.

[2] Although the Plaintiff initially asked for leave to take additional discovery before the motion was to be submitted, counsel for Plaintiff agreed that additional discovery is not necessary at this time given that the court is focused exclusively on the second prong of qualified immunity,



briefing from both parties addressing the notice requirement, (Docs. # 26, 27), and the motion is properly under submission. For the reasons outlined below, the court finds that there are no disputed issues of material fact and that Defendant has demonstrated it is entitled to judgment as a matter of law on the issue of qualified immunity. Accordingly, Defendant's motion for summary judgment is due to be granted.

I.      **Legal Standards for Evaluating a Summary Judgment Motion**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable

---

*i.e.* even assuming that a constitutional violation occurred, was Defendant Shanahan fairly and clearly on notice that her conduct violated clearly established law. (*See* Doc. # 25).

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case.

*See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## II.     Relevant Undisputed Facts[3]

The undisputed facts are as follows. This case arises from the termination of Plaintiff Angie Peterson from her position at the Jefferson County Department of Human Resources. In approximately April 2001, Caro Shanahan, Director of the Jefferson County Department of Human Resources, made the decision to close the Bessemer child support office. (Doc. # 7, Ex. A, at 18). Plaintiff opposed Shanahan's decision verbally and through email and facsimile correspondence with state officials, voicing her concern that the closing of the Bessemer office would pose a hardship on the clients. (Doc. # 11, Exs. 1-24, 28-29; Doc. # 1, at ¶¶ 16-17). In May 2001, Shanahan learned of the correspondence and told Plaintiff that she was not to use State time or equipment to further her protest about the closure of the Bessemer office. (Doc. # 1, at ¶ 18; Doc. # 7, Ex. A, at 20). Shanahan warned Plaintiff that she would be disciplined if she did not follow her instructions. (Doc. # 7, Ex. A, at 20).

Plaintiff continued her correspondence and was charged with insubordination on June 5,

---

[3] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

2001. (Doc. # 1, at ¶ 20; Doc. # 7, Ex. A at 21). After an administrative hearing in August 2001, Plaintiff was suspended for five days. (Doc. # 1, at ¶¶ 21, 25; Doc. # 7, Ex. A at 21).

After Plaintiff returned from her suspension, employees in the office reported to Shanahan that Plaintiff was using her office telephone, within earshot of office clients, to discuss the closure of the Bessemer office in a loud and agitated manner. (Doc. # 7, Ex. A at 21, 33). By this time, the Bessemer center had already been closed. (Doc. # 1, at ¶ 28). Shanahan alleges that Plaintiff also was disruptive during a staff meeting on August 23, 2001. (Doc. # 7, Ex. A at 28). On September 20, 2001, Shanahan recommended that Plaintiff's employment be terminated and an administrative hearing was held in January 2002. (Doc. # 7, Ex. A at 21). On February 6, 2002, Plaintiff received a letter terminating her employment. (Doc. # 1, at ¶ 35).

Plaintiff appealed her termination to the State Personnel Board, and the Administrative Law Judge for the Board upheld the decision to terminate Plaintiff. (Doc. # 7, Ex. A, at 41). The Plaintiff brought this action challenging those disciplinary decisions as retaliation for the exercise of Plaintiff's First Amendment right to freedom of speech. (Doc. # 1).

## III.    Applicable Substantive Law and Discussion

Shanahan has raised the defense of qualified immunity in this case. Qualified immunity utilizes an "objective reasonableness standard, giving a government agent the benefit of the doubt unless her actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). The Eleventh Circuit has cautioned that, "[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity."

*Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994). "We generally accord ... official conduct a presumption of legitimacy." *United States Department of State v. Ray,* 502 U.S. 164, 179 (1991).

Under the qualified immunity doctrine, government officials performing discretionary functions are immune from suit unless the alleged conduct violates "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). "Clearly established" rights must be "developed [] in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *Anderson v. Creighton*, 483 U.S. 635,640 (1987). Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this Circuit. *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

Thus, to overcome the defense of qualified immunity in this case, Plaintiff must demonstrate that (1) Defendant's termination of Plaintiff violated the Constitution, and (2) facts surrounding the alleged violation are "materially similar" to the facts of a preexisting case rendered by the Supreme Court, Eleventh Circuit, or Alabama Supreme Court such that the alleged violation in this case was "clearly established" as a constitutional violation at the time of the incident. *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1032-1033 (11th Cir. 2001).[4] "Because fair and clear notice to government officials is the cornerstone of qualified immunity, courts must diligently analyze the preexisting case law to determine whether it really did provide plain notice to every reasonable government official that the pertinent conduct, in the specific circumstances, would clearly violate preexisting federal

---

[4] There is no material dispute of fact that Shanahan was exercising her discretionary function when she terminated Plaintiff.

6

law." *Marsh*, 268 F.3d at 1031.

As the court indicated at the February 2, 2004 oral argument in this case, for the purposes of Defendant's motion to dismiss, the court assumes without deciding that Plaintiff has met her burden to establish that her termination constitutes a violation of her First Amendment right to freedom of speech.[5] Thus, the court focused the parties on the second prong of the immunity analysis and directed Plaintiff to put forth evidence of *any* materially similar case that would clearly establish Shanahan's conduct to be a constitutional violation *at the time of Plaintiff's termination on February 6, 2002.*

Although Plaintiff's February 9, 2004 brief cites two cases, neither of them meets the Eleventh Circuit's test for "clearly established." First, Plaintiff points to a Tenth Circuit case, *Finn v. New Mexico State Personnel Office*, 249 F.3d 1241 (10th Cir. 2001), which cannot clearly establish the law under the *Thomas* requirement that only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases establish the law in this Circuit for qualified immunity. *Thomas*, 323 F.3d at 955.

---

[5] Although the court assumes Plaintiff has met her burden for purposes of this opinion, the court harbors serious doubt that Plaintiff actually could discharge this burden given that, even if her protest of the Bessemer closure constituted a matter of public concern, Plaintiff still must overcome the second prong of the *Pickering* test which "weighs the employee's free speech interest against 'the interest of the state, as an employer, in promoting efficiency of the public services it performs.'" *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001) (*quoting Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). As the ALJ noted, the Plaintiff's disruptive behavior, even if related to a matter of public concern, posed a significant threat to the Department's right to promote the efficiency of their public service. (Doc. # 7, Ex. A, at 38). The Eleventh Circuit has cautioned that, "[b]ecause no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful." *Dartland v. Metropolitan Dad County*, 866 F.2d 1321, 1323 (11th Cir. 1989). This is not such a case.

Second, Plaintiff points to *Travers v. Jones*, 323 F.3d 1294 (11th Cir. 2003), a case decided *after* the Plaintiff's termination in this case.[6] In *Travers*, a county firefighter was suspended for "insubordinate and unbecoming conduct" after engaging in an verbal altercation with the county CEO while the firefighter was picketing outside the county's administration office during off-duty hours. *Travers*, 323 F.3d at 1294. The district court found that the county defendants were not entitled to qualified immunity on the ground that there were issues of fact concerning the reason for the firefighter's discipline. 323 F.3d at 1294.

The Eleventh Circuit began their analysis in *Travers* by reiterating that, while "[t]he law is clearly established that an employer may not demote or discharge a public employee for engaging in protected speech . . . , an employer may, however, discipline an employee for insubordination." 323 F.3d at 1295. Nonetheless, the court in *Travers did not* actually reach the constitutional question of whether the firefighter's conduct constituted protected speech or insubordination because the court gave preclusive effect to the factual findings of an earlier state administrative proceeding which resolved that issue in favor of the employer. 323 F.3d at 1296-97. Accordingly, the *Travers* court did not conduct an independent analysis into whether the firefighter's conduct constituted protected speech.

Apparently the Plaintiff believes that *Travers* prevents the application of qualified immunity in this case because the Eleventh Circuit noted that, "when there are issues of fact such as [a difference of opinion as to whether the conduct was protected speech or insubordination], qualified

---

[6] For this reason alone, *Travers* cannot establish that Shanahan's earlier termination of Plaintiff was clearly a consitutitional violation at the time of the decision.

8

immunity must be denied." 323 F.3d at 1296. While this analysis may be relevant to the first prong of the qualified immunity analysis - *i.e.*, whether or not a constitutional violation occurred - it is not relevant to the question of "clearly established" in the second prong of the analysis. Even assuming the facts in this case *are disputed* as to whether or not Plaintiff's speech is protected by the Constitution, that is of no moment given that the court already *has assumed* that Plaintiff established a constitutional violation and instead is focused on the question of whether the law was clearly established that Plaintiff's alleged insubordination was actually protected speech at the time Shanahan terminated her. The court is convinced that *Travers* did not clearly establish the law, both because *Travers* was decided *after* the alleged unconstitutional action took place in this case and because the Eleventh Circuit's *Travers* analysis is not materially similar because the court simply adopted the fact-finding of the state proceeding without reaching the protected speech/insubordination analysis.

Finally, the court has assumed that Plaintiff has met her burden of establishing that her termination violated the First Amendment (*see* p.7 n.5 *infra*), and therefore analyzed Defendant Shanahan's motion to dismiss based solely on her qualified immunity defense. An additional reason to grant Shanahan qualified immunity relates to the second prong of the *Pickering* balancing test which "weighs the employee's free speech interest against the interest of the state, as an employer, in promoting efficiency of the public services it performs." *Chesser*, 248 F.3d at 1122 (*quoting Pickering*, 391 U.S. at 568). The court cannot say that application of "*Pickering* balancing would lead to the inevitable conclusion that the discharge of [Plaintiff] was unlawful." *Dartland*, 866 F.2d at 1323. Therefore, this is not a situation in which a "bright-line standard [would put] the reasonable public official on notice" of a First Amendment violation (*id.*), and qualified immunity insulates

9

Shanahan from liability.

The court has given Plaintiff every opportunity to present a case on point (or some other valid legal theory) that clearly established Shanahan's conduct was unconstitutional and the Plaintiff has failed to discharge that burden. Accordingly, without any facts to compare the alleged violation in this case with preexisting, materially similar federal law, Shanahan's conduct is afforded a "presumption of legitimacy" and this court cannot, and will not, strip Shanahan of qualified immunity. *United States Department of State v. Ray*, 502 U.S. 164, 179 (1991); *see also Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994).

**IV.   Conclusion**

For the reasons stated above, Defendant's motion for summary judgment (Doc. # 6) is due to be granted. The court finds that no genuine issues of material fact remain for trial as to Plaintiff's claim and that Defendant is entitled to judgment as a matter of law. A separate Final Judgment will be entered.

**DONE** and **ORDERED** this ___6th___ day of April, 2004.

_____
**R. DAVID PROCTOR**
**UNITED STATES DISTRICT JUDGE**

10